CAIR LEGAL DEFENSE FUND
Lena F. Masri (D.C. # 100019) (*pro hac vice* admission pending)
   lmasri@cair.com
Gadeir I. Abbas* (VA # 81161) (*pro hac vice* admission pending)
   gabbas@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax:    (202) 379-3317

*Attorneys for Plaintiffs*

     *\* Licensed in VA, not in D.C.*
     *Practice limited to federal matters*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| **ANAS A. DOWL**, inmate # 345639<br>**ERNEST A. JACOBSSON**, inmate # 403566<br><br>     Plaintiffs,<br><br>   vs.<br><br>**DEAN WILLIAMS,** Commissioner,<br>Alaska Department of Corrections,<br>in his official capacity, only;<br><br>**CLARE SULLIVAN,** Deputy<br>Commissioner of Institutions,<br>Alaska Department of<br>Corrections, in her official<br>capacity, only;<br><br>**APRIL WILKERSON,** Director,<br>Administrative Services, Alaska<br>Department of Corrections, in her<br>official and individual capacities;<br><br>**SIDNEY WOOD,** Deputy Director,<br>of Institutions, Alaska Department<br>of Corrections, in his official and<br>individual capacities; | Case No. **3:18-cv-00119-JWS**<br><br>**VERIFIED COMPLAINT FOR<br>DECLARATORY AND INJUNCTIVE<br>RELIEF** |

1

**DAN AICHER,** Facility Manager I, Facilities Management, Alaska Department of Corrections, in his official and individual capacities;

**ZANE NIGHSWONGER,** Superintendent, Alaska Department of Corrections, Anchorage Correctional Complex, in his and individual official capacities;

**JASON MATA,** Food Service Supervisor, Alaska Department of Corrections, Anchorage Correctional Complex, in his official and individual capacities;

**GERALD SILLIMAN,** Chaplain, Alaska Department of Corrections, Anchorage Correctional Complex, in his official and individual capacities;

**GWEN HELMS,** Correctional Officer III, Alaska Department of Corrections, Anchorage Correctional Complex, in her individual capacity, only; and,

**DEBORAH LUPER,** Correctional Officer IV, Alaska Department of Corrections, Anchorage Correctional Complex, in her individual capacity, only;

Defendants.

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, **ANAS A. DOWL and ERNEST A. JACOBSSON** (collectively "Plaintiffs"), by and through their undersigned counsel, CAIR LEGAL DEFENSE FUND ("CAIR"), file this Complaint for Declaratory and Injunctive Relief against Defendants **DEAN WILLAMS, CLARE SULLIVAN, APRIL WILKERSON, DON AICHER, ZANE NIGHSWONGER, GWEN HELMS, DEBORAH LUPER, GERALD SILLIMAN** and **JASON MATA** (collectively "Defendants"), for violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. Sec. 2000cc *et seq.*, pursuant to 28 U.S.C. § 1331, and state as follows:

### Jurisdiction and Venue

1.      This Court has original federal question jurisdiction over Plaintiffs' claims of violations of the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq., pursuant to 28 U.S.C. § 1331.

2.      This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1343 over Plaintiffs' claims regarding the deprivation under color of State law of rights secured by the First, Eighth and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

3.      This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of Alaska.

4.      This Court has jurisdiction over Plaintiffs' constitutional claims pursuant to 42 U.S.C. § 1983.

5.      Plaintiffs' claims for declaratory and injunctive relief are sought under 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1343, Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general, legal and equitable powers of this Court.

6.     Plaintiffs' claims for attorneys' fees and costs are predicated upon 42 U.S.C. §§ 1988 and 2000cc-2(d), which authorize the award of attorneys' fees and costs to prevailing parties, pursuant to 42 U.S.C. § 1983 and RLUIPA.

7.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general, legal, and equitable powers of this Court.

8.     Venue is proper under 42 U.S.C. § 1391 as to all Defendants because Defendants operate within the geographical boundaries of the State of Alaska, and the substantial part of the acts described herein occurred within this District.

## Plaintiffs

9.     Plaintiff Anas A. Dowl is an individual, a male, a Muslim and an inmate at Anchorage Correctional Complex (Inmate No. 345639), and was at all relevant times considered a "person confined to an institution" as the term is defined in 42 U.S.C. § 2000cc *et seq.*

10.     Plaintiff Ernest A. Jacobsson is an individual, a male, a Muslim and an inmate at Anchorage Correctional Complex (Inmate No. 403566), and was at all relevant times considered a "person confined to an institution" as the term is defined in 42 U.S.C. § 2000cc *et seq.*

## Defendants Sued in Official Capacity, Only

11.     Defendant Dean Williams is Commissioner of the Alaska Department of Corrections. Defendant Williams is the ultimate decision-maker with authority to approve all Alaska Department of Corrections policies, including its operations and dietary and religious accommodation policies for the Anchorage Correctional Complex, which is operated by the Alaska Department of Corrections. Defendant Williams is being sued in his official capacity, only.

12.     Defendant Clare Sullivan is the Deputy Commissioner of Institutions of the Alaska Department of Corrections. Defendant Sullivan is a decision-maker with authority to approve all

4

Alaska Department of Corrections policies, including its operations and dietary and religious accommodation policies for the Anchorage Correctional Complex, which is operated by the Alaska Department of Corrections. Defendant Sullivan is being sued in her official capacity, only.

## Defendants Sued in Individual Capacity, Only

13.     Upon information and belief, Defendant Gwen Helms is a Correctional Officer III at Anchorage Correctional Complex who had supervisory authority and control over the grievance process available to the Plaintiffs during the time of Plaintiffs' confinement at Anchorage Correctional Complex. Defendant Helms personally engaged in discriminatory behavior against Plaintiffs. Defendant Helms is being sued in her individual capacity, only.

14.     Upon information and belief, Defendant Deborah Luper is a Correctional Officer III at Anchorage Correctional Complex who had supervisory authority and control over the Plaintiffs' confinement at Anchorage Correctional Complex. Defendant Luper personally engaged in discriminatory behavior against Plaintiffs. Defendant Luper is being sued in her individual capacity, only.

## Defendants Sued in Both Official and Individual Capacities

15.     Upon information and belief, Defendant April Wilkerson is the Director of Administrative Services of the Alaska Department of Corrections who is a decision-maker and possesses authority to approve all policies concerning Alaska Department of Corrections facilities, including Anchorage Correctional Complex, during the time of Plaintiffs' confinement at Anchorage Correctional Complex. Defendant Wilkerson personally engaged in discriminatory behavior against Plaintiffs. Defendant Wilkerson is being sued in both her official and individual capacities.

16.     Upon information and belief, Defendant Sidney Wood is the Deputy Director Institutions of the Alaska Department of Corrections who is a decision-maker and possesses authority to approve all policies, including food menus, concerning Alaska Department of Corrections facilities,

5

including Anchorage Correctional Complex, during the time of Plaintiffs' confinement at Anchorage Correctional Complex. Defendant Wood personally engaged in discriminatory behavior against Plaintiffs. Defendant Wood is being sued in both his official and individual capacities.

17.     Upon information and belief, Defendant Dan Aicher is the Facility Manager I of the Alaska Department of Corrections who is a decision-maker and possesses authority to approve all policies concerning certain Alaska Department of Corrections facilities, including Anchorage Correctional Complex, during the time of Plaintiffs' confinement at Anchorage Correctional Complex. Defendant Aicher personally engaged in discriminatory behavior against Plaintiffs. Defendant Aicher is being sued in both his official and individual capacities.

18.     Upon information and belief, Defendant Zane Nighswonger is the Superintendent of Anchorage Correctional Complex of the Alaska Department of Corrections who is a decision-maker and possesses authority to approve all policies concerning the facility during the time of Plaintiffs' confinement at Anchorage Correctional Complex. Defendant Nighswonger personally engaged in discriminatory behavior against Plaintiffs. Defendant Nighswonger is being sued in both his official and individual capacities.

19.     Upon information and belief, Defendant Jason Mata is the Food Service Supervisor at the Anchorage Correctional Complex of the Alaska Department of the Corrections. Defendant Mata is a decision-maker and possesses authority to approve Anchorage Correctional Complex policies concerning food service at the facility. Defendant Mata personally engaged in discriminatory behavior against Plaintiffs. Defendant Mata is being sued in both his official and individual capacities.

20.     Upon information and belief, Defendant Gerald Silliman is the Chaplain at the Anchorage Correctional Complex of the Alaska Department of the Corrections. Defendant Silliman is a decision-maker and possesses authority to approve Anchorage Correctional Complex policies concerning religious services and accommodations at the facility. Defendant Silliman personally

6

engaged in discriminatory behavior against Plaintiffs. Defendant Silliman is being sued in both his official and individual capacities.

## Nature of this Action

21. This is an action for declaratory and injunctive relief arising under the First, Eighth and Fourteenth Amendments to the Constitution of the United States, and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), and 42 U.S.C. § 1983. Plaintiffs seek costs and attorneys' fees under 42 U.S.C. § 1988.

22. Anchorage Correctional Complex is an "institution" within the meaning of 42 U.S.C. § 2000cc-1(a) and 42 U.S.C. § 1997.

23. Defendants have not identified any compelling government interest for denying Plaintiffs' requests for a religious diet that satisfies nutritional and caloric requirements during the month of Ramadan.[1]

24. Defendants have failed to enforce the applicable laws, policies, directives and regulations in the least restrictive means possible.

25. Defendants have unlawfully imposed a Muslim-specific and Ramadan-specific dietary policy that substantially burdens the rights of Plaintiffs to be free from cruel and unusual punishment and to the free exercise of religion by means that are not the least restrictive means available to the correctional facilities to protect their asserted governmental interest.

26. Defendants have imposed regulations that unreasonably subject Plaintiffs to cruel and unusual punishment and that limit religious exercise, discriminate against Plaintiffs on the basis of religious denomination, and treat Plaintiffs on less than equal terms with other religious and non-

---

[1] Ramadan is the ninth month of the Islamic Calendar, which is based on a lunar calendar. Muslims worldwide observe Ramadan as a month of fasting. This annual observance is regarded as one of the Five Pillars of Islam. Among other things, while fasting from dawn until sunset, Muslims refrain from consuming food, drinking liquids, smoking and sexual relations. In 2018, Ramadan commenced on May 16, 2018 and will end on approximately June 15, 2018.

religious similarly-situated persons.

**Denial of a Proper Nutritional and Caloric Intake During the Month of Ramadan ("Ramadan Policy")**

27.     Under State of Alaska Department of Corrections Policy and Procedure Directive 805.01 "Food Service Standards," Section VI.A., all menus and meals at correctional facilities, which include Anchorage Correctional Complex, are required to be "nutritious, well-balanced and heart-healthy."

28.     Further, under State of Alaska Department of Corrections Policy and Procedure Directive 805.01 "Food Service Standards," Section VII.B.1., the food menu is required to "meet all recommended daily dietary allowances, with adjustments for age, sex, and activity."

29.     Pursuant to the "Dietary Guidelines for Americans 2015-2020" issued by the U.S. Department of Health and Human Services and the U.S. Department of Agriculture, Plaintiffs' estimated calorie needs in accordance with their age, sex and physical activity level ranges from 2,600 to 2,800 calories per day.[2]

30.     Additionally, under State of Alaska Department of Corrections Policy and Procedure Directive 805.01 "Food Service Standards," Section VII.A.1., prisoners shall receive three meals a day, at least two of which are hot meals.

31.     Under State of Alaska Department of Corrections Policy and Procedure Directive 805.03 "Special and/or Religious Meals," Section E.1., each Superintendent is required to develop standard operating procedures ("SOPs") in coordination with the DOC Statewide Chaplaincy Coordinator to allow for the temporary accommodation of multi-day religious fasting and dietary prohibitions, including fasting during Ramadan.

---

[2] U.S. Department of Health and Human Services and U.S. Department of Agriculture, *2015-2020 Dietary Guidelines for Americans*, 8th Edition, December 2015. *Available at*: https://health.gov/dietaryguidelines/2015/resources/2015-2020_Dietary_Guidelines.pdf.

32.     Upon information and belief, the Ramadan Policy and the Ramadan Bagged Meal Menu implemented at Anchorage Correctional Complex during the confinement of Plaintiffs was coordinated with Defendant Silliman as Chaplain for Anchorage Correctional Complex.

33.     Upon information and belief, during Ramadan, Defendants do not provide Muslim inmates who participate in the Ramadan fast at Anchorage Correctional Complex, including Plaintiffs, a balanced nutritional and caloric diet on any given day during Ramadan. (This policy will hereinafter be referred to as the "Ramadan Policy.")

34.     Upon information and belief, Defendants provide other inmates at Anchorage Correctional Complex and throughout Alaska Department of Corrections facilities between 2,600 and 2,800 calories and a balanced nutritional diet on any given day.

35.     Upon information and belief, pursuant to the Ramadan Policy, Defendants provide Muslim inmates participating in the Ramadan fast, including Plaintiffs, with two bagged meals every evening that contain cold meals that range from approximately 500 to approximately 1,100 calories per day, depending on the day, which is substantially lower than what is required under Policy and Procedure Directive 805.01 "Food Service Standards," and the "Dietary Guidelines for Americans 2015-2020."

36.     Additionally, pursuant to the Ramadan Bagged Meal Menu, during several days, Defendants provide Muslim inmates participating in the Ramadan fast, including Plaintiffs, with bologna sandwiches which upon information and belief contain pork product that, in accordance with their sincerely-held religious beliefs, Plaintiffs and other Muslim inmates are not permitted to eat.

37.     As a result, on the days that Plaintiffs and other Muslim inmates participating in the Ramadan fast receive bologna sandwiches, in accordance with their sincerely-held religious beliefs, they forego eating the sandwiches and as a result receive even less calories than the already substantially low amount they are given.

9

38.     Upon information and belief, pursuant to the Ramadan Policy, Defendants do not permit Muslim inmates participating in the Ramadan fast to receive hot meals, nor do they permit them to eat any food from the regular meal line that other inmates eat at.

39.     Upon information and belief, pursuant to the Ramadan Policy, Defendants do not permit Muslim inmates participating in the Ramadan fast to keep any food in their cells or eat any food other than the food that is contained in the two bagged meals provided to them by Defendants.

40.     Accordingly, Plaintiffs other Muslim inmates at that facility, are completely dependent upon the Defendants to provide them with food.

41.     The nutritional and caloric intake of the Ramadan Bagged Meal Menu given to Plaintiffs and other Muslim inmates participating in the Ramadan fast by Defendants is approximately less than half the number of calories that other inmates receive on any given day.

42.     Plaintiffs observe the Ramadan fast, in accordance with their sincerely-held religious belief that fasting the month of Ramadan is a religious obligation which is compulsory on all healthy adult Muslims.

43.     During the month of Ramadan, Muslims fast from sunrise to sundown by, among other things, abstaining from eating and drinking.  Muslims believe Ramadan is a time for spiritual reflection, self-improvement, and increased devotion and worship.

44.     During the month of Ramadan, Muslims are permitted to eat and drink from sundown to sunrise.

45.     In order to ensure that Plaintiffs receive their meals before sunrise and after sundown, as opposed to regular meal times, Plaintiffs, along with other Muslim inmates, submitted a written application to eat from the Ramadan menu.

46.     Each of Plaintiffs' requests to eat from the Religious Ramadan menu were approved.

47.     However, by requesting to eat from the Ramadan menu, Plaintiffs, along with other

Muslim inmates, are forced to sacrifice a proper nutritional and caloric diet in order to adhere to their sincerely-held religious beliefs.

48. Upon information and belief, other inmates on religious diets, menus or meal plans are not forced to consume such a significantly reduced number of calories or sacrifice a proper nutritional diet.

49. Defendants, *via* the Ramadan Policy, have subjected and continue to subject Plaintiffs and other Muslim inmates with a religious basis for participating in the Ramadan fast to cruel and unusual punishment, distinctive and disparate treatment, and less than equal terms than inmates of other faith backgrounds by denying them a proper nutritional and caloric diet on a daily basis.

50. Defendants, *via* the Ramadan Policy, have subjected and continue to subject have imposed and continue to impose a substantial burden upon the rights of Plaintiffs and other Muslim inmates to the free exercise of religion, and discriminate and continue to discriminate against Plaintiffs on the basis of religion or religious denomination in violation of, among other laws, RLUIPA. 42 U.S.C. § 2000cc(b)(2).

51. Defendants are capable of providing Plaintiffs and other Muslim inmates with a proper caloric and nutritional diet because it provides other inmates at its facilities with a proper caloric and nutritional diet.

52. The substantial burden that the Defendants, *via* the Ramadan Policy, impose on Plaintiffs and other Muslim inmates participating in the Ramadan fast is not necessary, or the least restrictive means, to achieve any compelling state interest.

**Plaintiffs Anas A. Dowl and Ernest Jacobsson**

53. As discussed above, upon information and belief, the meals provided to Plaintiff Dowl during the month of Ramadan in the years 2017 and 2018 and Plaintiff Jacobsson in the year 2018 did not and do not meet the minimum requirements that all inmates receive a balanced nutritional diet

11

containing between 2,600 and 2,800 calories on any given day during Ramadan.

54.     In fact, the meals provided to Plaintiffs Dowl and Jacobsson are less than half the estimated number of calories that they need per day, based on their age, sex and activity level, in accordance with the "Dietary Guidelines for Americans 2015-2020," which ranges from 2,600 to 2,800 calories per day.[3]

55.     Moreover, the meals Plaintiffs Dowl and Jacobsson receive are "cold meals," whereas other inmates at the same facility are receiving "hot meals."

56.     In addition to receiving meals that are below caloric and nutritional standards, oftentimes during the month of Ramadan, Plaintiffs Dowl and Jacobsson's bagged meals contain pork product, which in accordance with their sincerely-held religious beliefs, they are not permitted to eat.

57.     As such, on the days where their bagged meals contain pork product, they cannot and do not consume the pork product; and as a result, they eat even less than the already substantially low number of calories that they are given.

58.     Plaintiff Dowl filed several Requests for Interview Form ("ROI") (Form 808.11A) in accordance with State of Alaska Department of Corrections Policy and Procedure Directive 808.03 "Prisoner Grievances," Section VII.A., in an attempt to informally resolve his grievances regarding the inadequate nutrition and calories that he is receiving pursuant to the Ramadan Policy, the pork products that he is being provided by Defendants that he cannot consume in accordance with his sincerely-held religious beliefs, and the lack of hot meals during both Ramadan 2017 and Ramadan 2018.

59.     Similarly, and for the same reasons, Plaintiff Jacobsson filed several ROIs regarding the inadequate nutrition and calories that he is receiving pursuant to the Ramadan Policy, the pork products that he is being provided by Defendants that he cannot consume in accordance with his

---

[3] *Id.* at 78.

sincerely-held religious beliefs, and the lack of hot meals during Ramadan 2018.

60.     The grievances in the ROIs were either ignored, denied or left unanswered.

61.     Also in accordance with State of Alaska Department of Corrections Policy and Procedure Directive 808.03 "Prisoner Grievances," Section VII.B.2., in an attempt to informally resolve their grievances regarding the inadequate nutrition and calories that Defendants are providing them pursuant to the Ramadan Policy directly, the pork products that Defendants are providing them that they cannot consume in accordance with their sincerely-held religious beliefs, and the hot meals that the Defendants are prohibiting them to eat during Ramadan 2018 (Plaintiff Dowl filed similar ROIs regarding Ramadan 2017), they spoke with Defendant Silliman, Defendant Mata, Defendant Luper, Defendant Helms and other staff members aware of or directly involved in their grievances.

62.     On May 19, 2018, Plaintiff Dowl had a prescheduled call with his undersigned counsel.

63.     At the time of the prescheduled call, Plaintiff Dowl's undersigned counsel spoke with Defendant Luper and requested to be connected to Plaintiff Dowl.

64.     Minutes after Plaintiff Dowl's phone call with his undersigned counsel, Defendant Luper conducted a "shake down" of Plaintiff Dowl and Plaintiff Jacobsson's cell, and confiscated all food items that they had saved in their cells to eat that day, including the two bagged meals provided to them the evening before and four hamburgers that they traded with other inmates in exchange for the bologna sandwiches that they could not eat in accordance with their sincerely-held beliefs.

65.     In response to Plaintiffs' inquiries as to why Defendant Luper confiscated their food that they had either received from the facility to eat or saved as they were not aware of any policy that has been posted that prohibits them from doing so, she responded that Defendant Williams issued a policy directive by email that prohibited Muslim inmates participating in the Ramadan fast from saving food in their cells.

66.     In another attempt to informally resolve their grievances, Plaintiffs Dowl and

13

Jacobsson explained to Defendant Luper that they were starving and needed food to eat, and that she took the only food they had to eat.

67.     Defendant Luper responded by advising Plaintiffs that she was confiscating their food as a punishment for saving food in their cells.

68.     Defendant Luper further informed Plaintiffs that she was going to remove both Plaintiff Dowl and Plaintiff Jacobsson from the Ramadan list as an added disciplinary measure for saving food in their cells.

69.     That day, neither Plaintiff Dowl nor Plaintiff Jacobsson were given any bagged meals to eat; and accordingly, they ate nothing that day.

70.     In accordance with their sincerely-held religious beliefs, they continued fasting the next day without having had anything to eat the day before.

71.     In accordance with State of Alaska Department of Corrections Policy and Procedure Directive 808.03 "Prisoner Grievances," Section VII.A.1.c., Plaintiff Dowl immediately submitted an ROI and afterwards two Prisoner Grievance Forms (Form 808.03C) regarding the lack of adequate meals and the pork products that he is being fed by Defendants, and Defendant Luper removing him from the Ramadan list and confiscating the only food he had to eat.

72.     Similarly and for the same reasons, Plaintiff Jacobsson also immediately submitted two ROIs and afterwards a Prisoner Grievance Form regarding the lack of adequate meals and the pork products that he is being fed by Defendants, and Defendant Luper removing him from the Ramadan list and confiscating the only food he had to eat.

73.     As of the date of this filing, Plaintiffs have not received any response to the grievances filed by Plaintiffs.

74.     On May 21, 2018, both Plaintiffs Dowl and Jacobsson were told by a correctional officer that Defendant Luper advised that they cannot get food from the main meal line to supplement

14

the inadequate bagged meals Defendants are providing to Plaintiffs.

75.     On May 21, 2018, in accordance with State of Alaska Department of Corrections Policy and Procedure Directive 808.03 "Prisoner Grievances," Section VI.B.1., both Plaintiffs Dowl and Jacobsson requested emergency grievances regarding the lack of adequate meals and the pork products being fed to them by Defendants. Defendants provided Plaintiffs with standard grievance forms instead, and Plaintiff Dowl wrote "emergency" across the top.

76.     On May 22, 2018, both of Plaintiffs' emergency grievances were denied processing as an emergency, and upon information and belief, are being processed in accordance with standard grievance procedure timelines.

77.     Because Ramadan commenced on May 16, 2018 and will end on approximately June 16, 2018; it is unlikely that Plaintiffs' grievances will be resolved before Ramadan concludes.

78.     In accordance with State of Alaska Department of Corrections Policy and Procedure Directive 808.03 "Prisoner Grievances," Section VII.D.1.C., prisoners "cannot appeal the Department's determination as to whether the issue grieved is an emergency."

79.     In the meantime, Plaintiffs are suffering irreparable harm to their health, including malnutrition, starvation, weight loss, hunger pangs, headaches, dizziness, among other things.

80.     Both Plaintiffs have exhausted their administrative remedies related to emergency grievances.

**Count I**
**Violation of Eighth and Fourteenth Amendment to the United States Constitution**
**(Cruel and Unusual Punishment)**

81.     Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

82.     Under the Eighth Amendment, prisoners have the right to be from cruel and unusual punishment.

15

83. The Eighth Amendment imposes a duty on Defendants to provide humane conditions of confinement, including insuring, among other things, that prisoners receive adequate food. *See Farmer v. Brennan,* 511 U.S. 825 (1994).

84. Upon information and belief, the Ramadan Policy does not provide Plaintiffs or Muslim inmates who observe the holy fast during Ramadan, a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan.

85. Upon information and belief, the daily caloric intake under the Ramadan Policy ranges from approximately 500 calories to approximately 1,100 calories, on any given day during Ramadan.

86. The nutritional and caloric intake under the Ramadan Policy is approximately less than half the number of calories that other inmates receive on any given day during Ramadan.

87. Defendants, acting under color of state law, took Plaintiffs into physical police custody. In doing so, they established a special custodial relationship with Plaintiffs, giving rise to affirmative duties on their part to secure and ensure that Plaintiffs would be given adequate food and to secure for Plaintiffs the constitutionally-protected rights identified above.

88. Defendants, acting under color of state law, violated Plaintiffs' above-stated constitutionally-protected rights by wrongfully denying them adequate food.

89. Specifically, Defendants, acting under color of law, owed Plaintiffs the duty to follow, implement, and comply with State of Alaska Department of Corrections Policy and Procedure Directive 805.01 "Food Service Standards," Section VI.A., and Policy and Procedure Directive 805.01 "Food Service Standards," Section VII.B.1., which mandate that all menus and meals at correctional facilities provide Plaintiffs "nutritious, well-balanced and heart-healthy" meals that "meet all recommended daily dietary allowances, with adjustments for age, sex, and activity."

90. Defendants, acting under color of law, violated State of Alaska Department of Corrections Policy and Procedure Directive 805.01 "Food Service Standards," Section VI.A., and

16

Policy and Procedure Directive 805.01 "Food Service Standards," Section VII.B.1. by deliberately failing to provide Plaintiffs and other Muslim prisoners who observe the holy fast during Ramadan, a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan.

91. Defendants' depravation of a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan is objectively sufficiently serious in that it fails to provide Plaintiffs adequate food (i.e. a humane condition of confinement).

92. Despite Plaintiffs' repeated pleas and requests for a proper nutritional and caloric diet on any given day during Ramadan, Defendants failed to take adequate measures to ensure that Plaintiffs were receiving adequate food.

93. Defendants subjectively perceived, or should have subjectively perceived, Plaintiffs' complaints, regarding the inadequacy of food.

94. Defendants' acts and omissions were sufficiently harmful to evidence a substantial risk of serious harm to Plaintiffs and other Muslim inmates observing the Ramadan fast.

95. Defendants' acts and omissions were sufficiently harmful to offend evolving standards of decency in violation of the Eighth Amendment.

96. Defendant' acts and omissions in depriving Plaintiffs of a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan were such that they denied Plaintiffs and other Muslim inmates the minimal civilized measure of life's necessities.

97. Defendants' actions while acting under color of state law, in denying Plaintiffs a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan, amounts to cruel and unusual punishment and excessive force in violation of their constitutionally-protected rights as stated above.

98. Defendants' conduct as outlined above, was so grossly incompetent, inadequate, or

17

excessive so as to shock the conscience or to be intolerable to fundamental fairness and violates the Eighth Amendment prohibition against cruel and unusual punishment.

99. Defendants, acting under the color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of depriving Plaintiffs and other Muslim prisoners observing the holy fast during Ramadan with a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan.

100. Defendants' policies, customs and practices were carried out willfully and with wanton disregard and with the spirit of gross negligence, were the direct and deliberate cause of constitutional deprivations including Plaintiffs' rights to liberty and due process, and were the direct cause of Plaintiffs' cruel and unusual punishment and excessive force.

101. As a direct and proximate result of these polices, practices and customs, Plaintiffs were deprived of their constitutionally-protected rights as described above, by Defendants.

102. As a direct and proximate result of these polices, practices and customs, Plaintiffs were and are forced to choose on a daily basis during the month of Ramadan whether to adhere to their sincerely-held religious beliefs or sacrifice their basic nutritional needs.

103. As a direct and proximate result of these polices, practices and customs, Plaintiffs have suffered and will continue to suffer from starvation, weight loss, hunger pangs, severe headaches, dizziness, among other things.

104. As a result of their conduct described above, Defendants are also liable under 42 U.S.C. § 1983.

105. Plaintiffs are entitled to a declaration that the Ramadan Policy is a violation of Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment.

106. Ramadan commenced on May 16, 2018 and will end on approximately June 15, 2018.

107. Upon information and belief, it is unlikely that this case will be resolved before Ramadan concludes.

108. Plaintiffs are entitled to issuance of a preliminary and permanent injunction granting the relief described in the Prayer for Relief below.

109. Plaintiffs are entitled to issuance of a preliminary and permanent injunction enjoining Defendants from denying Plaintiffs a proper caloric and nutritional diet on any given day.

110. Defendants' unlawful actions caused Plaintiffs harm and Plaintiffs are entitled to injunctive and declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory relief and injunctive relief barring Defendants from engaging in further unconstitutional practices in prohibiting Plaintiffs and other Muslim prisoners from receiving a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan. Further, Plaintiffs request compensatory and punitive damages against the Defendants sued in their individual capacity, only, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## Count II
## Violation of Religious Land Use and Institutionalized Persons Act
### (Religious Exercise)

111. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

112. Defendants' Ramadan Policy, whereby Defendants do not provide Plaintiffs with a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day in Ramadan chill Plaintiffs' right to free exercise of religion.

113. Defendants have deprived and continue to deprive Plaintiffs of their right to the free exercise of religion as secured by the Religious Land Use and Institutionalized Persons Act of 2000,

19

42 U.S.C. § 2000cc(a) et seq., by imposing and implementing an unconstitutional and discriminatory Ramadan Policy that substantially burdens Plaintiffs' religious exercise.

114.     Defendants' Ramadan Policy, in addition to the above-mentioned unlawful actions caused and continues to cause Plaintiffs harm because it forces them to choose, on a daily basis between violating their core religious beliefs (the first requires them to fast during the month of Ramadan and the second, requires them to abstain from foods that violate their religious tenets) and waiving their right to receiving a menu that meets minimum nutritional standards.

115.     Defendants have arbitrarily and unjustly established a Ramadan Policy requiring Muslim inmates to receive meals that do not provide a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan.

116.     Defendants have not established a dietary policy requiring inmates of other faiths participating in religious diets to receive meals that do not meet minimum nutritional standards.

117.     The restrictions imposed on Plaintiffs and other Muslim inmates have substantially burdened their religious exercise.

118.     By imposing and implementing the above-described Ramadan Policy on Plaintiffs and other Muslim inmates observing the Ramadan fast, Defendants have imposed a substantial burden on Plaintiffs' exercise of Islam within Anchorage Correctional Complex.

119.     Imposition of such a burden is not in furtherance of a compelling government interest and is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

120.     Plaintiffs are entitled to a declaration that the Ramadan Policy is a substantial burden to the free exercise of Plaintiffs' religion, is not justified by a compelling government interest, and is in violation of RLUIPA.

121.     Ramadan commenced on May 16, 2018 and will end on approximately June 15, 2018.

122.     Upon information and belief, it is unlikely that this case will be resolved before

Ramadan concludes.

123. Plaintiffs are entitled to issuance of a preliminary and permanent injunction granting the relief described in the Prayer for Relief below.

124. Defendants' unlawful actions caused Plaintiffs harm and Plaintiffs are entitled to injunctive and declaratory relief, as well as compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory relief and injunctive relief barring Defendants from engaging in further unconstitutional practices in prohibiting Plaintiffs and other Muslim prisoners from receiving a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan. Further, Plaintiffs request compensatory and punitive damages against the Defendants sued in their individual capacity, only, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## Count III
## <u>Violation of Religious Land Use and Institutionalized Persons Act</u>
**(Discrimination on the Basis of Religion)**

125. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

126. Defendants' Ramadan Policy treats Plaintiffs and other Muslim inmates observing the Ramadan fast on less than equal terms with other religious and non-religious prisoners in Anchorage Correctional Complex and throughout Alaska Department of Corrections facilities.

127. Defendants' Ramadan Policy, in addition to the above-mentioned unlawful actions caused and continues to cause Plaintiffs and other Muslim inmates observing the Ramadan fast harm because it forces them to choose, on a daily basis between violating their core religious beliefs (the first requires them to fast during the month of Ramadan and the second requires them to abstain from foods that violate their religious tenets) and waiving their right to receiving a menu that meets

21

minimum nutritional standards.

128.    Defendants have deprived and continue to deprive Plaintiffs and other Muslim inmates observing the Ramadan fast of their right to be free from religious discrimination as secured by the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc(a) et seq., by imposing and implementing a Ramadan Policy in a manner that discriminates on the basis of religion.

129.    Defendants have imposed onerous restrictions on Plaintiffs that have not been imposed on prisoners of other faith backgrounds in Anchorage Correctional Complex and throughout Alaska Department of Corrections facilities.

130.    Defendants have arbitrarily and unjustly established a Ramadan Policy requiring Plaintiffs and other Muslim inmates observing the Ramadan fast to receive meals that do not meet minimum nutritional standards during the month of Ramadan.

131.    Defendants have not established a dietary policy requiring inmates of other faith backgrounds participating in religious diets to receive meals that do not meet minimum nutritional standards.

132.    Plaintiffs are entitled to a declaration that Defendants' Ramadan Policy constitutes discrimination on the basis of Plaintiffs' religion, is not justified by a compelling government interest, and is in violation of RLUIPA.

133.    Ramadan commenced on May 16, 2018 and will end on approximately June 15, 2018.

134.    Upon information and belief, it is unlikely that this case will be resolved before Ramadan concludes.

135.    Plaintiffs are entitled to issuance of a preliminary and permanent injunction granting the relief described in the Prayer for Relief below.

136.    Plaintiffs are entitled to issuance of a preliminary and permanent injunction enjoining Defendants from denying Plaintiffs a proper caloric and nutritional diet and a halal food diet.

137.    Defendants' unlawful actions caused Plaintiffs harm and Plaintiffs are entitled to injunctive and declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory relief and injunctive relief barring Defendants from engaging in further unconstitutional practices in prohibiting Plaintiffs and other Muslim prisoners from receiving a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan.   Further, Plaintiffs request compensatory and punitive damages against the Defendants sued in their individual capacity, only, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

**Count IV**
**Violation of First and Fourteenth Amendment to the United States Constitution**
**(Free Exercise of Religion)**

138.    Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

139.    Defendants' Ramadan Policy, in addition to the above-mentioned unlawful actions caused and continues to cause Plaintiffs harm because it forces them to choose, on a daily basis between violating their core religious beliefs (the first requires them to fast during the month of Ramadan and the second, requires them to abstain from foods that violate their religious tenets) and waiving their right to receiving a menu that meets minimum nutritional standards.

140.    Defendants' Ramadan Policy and the above-mentioned unlawful actions chill Plaintiffs' right to free exercise of religion.

141.    Defendants have deprived and continue to deprive Plaintiffs of their right to free exercise of religion as secured by the First Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment to the United States Constitution, by imposing and implementing a Ramadan Policy that substantially burdens Plaintiffs' religious exercise.

23

142.     Defendants have arbitrarily and unjustly established a Ramadan Policy requiring Muslim inmates to receive meals that do not meet minimum nutritional standards during the month of Ramadan.

143.     Defendants have not established a dietary policy requiring inmates of other faiths participating in religious diets to receive meals that do not meet minimum nutritional standards.

144.     By imposing and implementing the above-described Ramadan Policy on Plaintiffs and other Muslim inmates observing the Ramadan fast, Defendants have imposed a substantial burden on their exercise of Islam.

145.     Imposition of such a burden is not in furtherance of a compelling government interest and is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

146.     Plaintiffs are entitled to a declaration that the Ramadan Policy is a substantial burden to the free exercise of Plaintiffs' religion, is not justified by a compelling government interest, and is in violation of Plaintiffs' First and Fourteenth Amendment rights to their free exercise of religion.

147.     Ramadan commenced on May 16, 2018 and will end on approximately June 15, 2018.

148.     Upon information and belief, it is unlikely that this case will be resolved before Ramadan concludes.

149.     Plaintiffs are entitled to issuance of a preliminary and permanent injunction granting the relief described in the Prayer for Relief below.

150.     Plaintiffs are entitled to issuance of a preliminary and permanent injunction enjoining Defendants from denying Plaintiffs and other Muslim inmates observing the Ramadan fast a proper caloric and nutritional diet.

151.     Defendants' unlawful actions caused Plaintiffs harm and Plaintiffs are entitled to injunctive and declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory relief and injunctive relief barring Defendants from engaging in further unconstitutional practices in prohibiting Plaintiffs and other Muslim prisoners from receiving a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan. Further, Plaintiffs request compensatory and punitive damages against the Defendants sued in their individual capacity, only, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## Count V
## Violation of First and Fourteenth Amendment to the United States Constitution
### (Equal Protection)

152.    Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

153.    Defendants' Ramadan Policy treats these prisoners on less than equal terms with other religious and non-religious prisoners in Anchorage Correctional Complex and throughout Alaska Department of Corrections facilities, thereby creating a denominational preference against Islam as a religion.

154.    Defendants' Ramadan Policy, in addition to the above-mentioned unlawful actions caused and continues to cause Plaintiffs and other Muslim inmates observing the Ramadan fast harm because it forces them to choose, on a daily basis between violating their core religious beliefs (the first requires them to fast during the month of Ramadan and the second requires them to abstain from foods that violate their religious tenets) and waiving their right to receiving a menu that meets minimum nutritional standards.

155.    Defendants have deprived and continue to deprive Plaintiffs and other Muslim inmates observing the Ramadan fast of their right to equal protection of the laws as secured by the Fourteenth Amendment to the United States Constitution, by imposing and implementing a Ramadan Policy in a manner that discriminates on the basis of religion.

25

156.     Defendants have imposed onerous restrictions on Plaintiffs that have not been imposed on prisoners of other faiths at Anchorage Correctional Complex and throughout Alaska Department of Corrections facilities.

157.     Defendants have arbitrarily and unjustly established a Ramadan Policy requiring Muslim inmates to receive meals that do not meet minimum nutritional standards during the month of Ramadan.

158.     Defendants have not established a dietary policy requiring inmates of other faiths participating in religious diets to receive meals that do not meet minimum nutritional standards.

159.     The restrictions imposed on Plaintiffs are unconstitutional and have substantially burdened their religious exercise.

160.     By imposing and implementing the above-described Ramadan Policy and denying a halal food diet to Muslim inmates, Defendants have imposed a substantial burden on Plaintiffs' exercise of Islam.

161.     Imposition of such a burden is not in furtherance of a compelling government interest and is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

162.     Plaintiffs are entitled to a declaration that the Ramadan Policy is a substantial burden to the free exercise of Plaintiffs' religion, is not justified by a compelling government interest, and is in violation of Plaintiffs' Fourteenth Amendment right to equal protection of the laws.

163.     Ramadan commenced on May 16, 2018 and will end on approximately June 15, 2018.

164.     Upon information and belief, it is unlikely that this case will be resolved before Ramadan concludes.

165.     Plaintiffs are entitled to issuance of a preliminary and permanent injunction granting the relief described in the Prayer for Relief below.

166.     Defendants' unlawful actions caused Plaintiffs harm and Plaintiffs are entitled to

26

injective and declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory relief and injunctive relief barring Defendants from engaging in further unconstitutional practices in prohibiting Plaintiffs and other Muslim prisoners from receiving a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan. Further, Plaintiffs request compensatory and punitive damages against the Defendants sued in their individual capacity, only, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

**Prayer for Relief**

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment in their favor and against Defendants on each and every count in this complaint, and enter an Order awarding the following relief:

1.      A declaratory judgment that:

   a.      Defendants' policies, practices, and customs violate the First, Eighth and Fourteenth Amendments to the Constitution of the United States, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), and 42 U.S.C. § 1983;

   b.      Defendants' Ramadan Policy constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution;

   c.      Defendants' denial of a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan constitutes a violation of the First Amendment to the United States Constitution and creates a chilling effect on Plaintiffs' free exercise of religion;

   d.      Defendants' denial of Plaintiffs' request for a balanced nutritional diet containing

27

between 2,600 and 2,800 calories on any given day during Ramadan is a substantial burden to the free exercise of Plaintiffs' religion and is not justified by a compelling government interest;

e.     Defendants' Ramadan Policy treats these prisoners on less than equal terms with other religious and non-religious prisoners in Anchorage Correctional Complex and throughout Alaska Department of Corrections facilities;

2.     An injunction that:

a.     Enjoins Defendants from denying Plaintiffs a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan, because Defendants' denial of the proper caloric and nutritional diet forces Plaintiffs, who have a religious basis for fasting during the month of Ramadan, to choose, on a daily basis, between violating their core religious beliefs (ie: fasting during the month of Ramadan and abstaining from foods that violate their beliefs) and receiving a menu that meets minimum nutritional standards;

b.     Requires Defendants to remedy the constitutional and statutory violations identified above, including, but not limited to, eliminating any existing policy whereby Plaintiffs and other Muslim prisoners, and others similarly-situated, are denied a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day during Ramadan;

3.     An award of compensatory and punitive damages against the individual capacity defendants, only, pursuant to 42 U.S.C. § 1983.

4.     An award of attorneys' fees, costs, and expenses of all litigation, pursuant to 42 U.S.C. § 1988; and,

5.     Such other and further relief as the Court may deem just and proper.

28

**JURY DEMAND**

NOW COME Plaintiffs, by and through their undersigned counsel, and hereby demand a jury trial of the above-referenced causes of action so triable.

Respectfully submitted,

Dated: May 22, 2018                     CAIR LEGAL DEFENSE FUND

By /s/ Lena F. Masri
    Lena F. Masri (D.C. Bar No. 100019)
      (*pro hac vice* admission pending)
    Gadeir I. Abbas (VA Bar No. 81161)*
      (*pro hac vice* admission pending)
    453 New Jersey Ave., SE
    Washington, DC 20003
    Phone: (202) 742-6420
    Fax:    (202) 379-3317

      *\* Licensed in VA, not in D.C.*
      *Practice limited to federal matters*

# VERIFICATION OF ANAS A. DOWL

I hereby verify that the facts that pertain to me are true and accurate to the best of my knowledge, belief and recollection.

_____
Signature

Dated: May 22, 2018

## VERIFICATION OF ERNEST JACOBSSON

I hereby verify that the facts that pertain to me are true and accurate to the best of my knowledge, belief and recollection.

_Ernest A Jacobsson_
Signature

Dated: May 22, 2018