CAIR LEGAL DEFENSE FUND
Lena F. Masri (D.C. # 100019) (*pro hac vice* admission pending)
  lmasri@cair.com
Gadeir I. Abbas* (VA # 81161) (*pro hac vice* admission pending)
  gabbas@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax:    (202) 379-3317

*Attorneys for Plaintiffs*

   * *Licensed in VA, not in D.C.*
   *Practice limited to federal matters*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **ANAS A. DOWL**, inmate # 345639<br>**ERNEST A. JACOBSSON**, inmate # 403566<br><br>           Plaintiffs,<br><br>     vs.<br><br>**DEAN WILLIAMS,** Commissioner,<br>Alaska Department of Corrections,<br>in his official capacity, only; *et. al.*<br><br>           Defendants. | Case No. 18-cv-_____<br><br>**MOTION FOR AN EMERGENCY *EX PARTE* TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**<br><br>Pursuant to Fed. R. Civ. P. 65 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* |

# NOTICE OF MOTION AND MOTION
# FOR AN EMERGENCY *EX PARTE* TEMPORARY RESTRAINING ORDER
# AND/OR PRELIMINARY INJUNCTION

TO ALL DEFENDANTS AND THEIR COUNSEL: Please take notice that as soon as the matter may be heard in the United States District Court for the District of Alaska, Plaintiffs Anas Dowl and Ernest Jacobson shall and hereby does move the Court for an emergency *ex parte* temporary restraining order and/or preliminary injunction requiring Defendants to supply Plaintiffs (and all Muslim prisoners) with adequate nutrition, free of pork products, during Ramadan. This motion is brought pursuant to Federal Rule of Civil Procedure 65 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* Plaintiffs' motion is based on the verified complaint, this notice of motion, the supporting memorandum of points and authorities, and all such further written materials and oral arguments as may be presented to the Court.

Dated: May 22, 2018                     CAIR LEGAL DEFENSE FUND

                                        By /s/ Lena F. Masri
                                           Lena F. Masri (D.C. Bar No. 100019)
                                             (*pro hac vice* admission pending)
                                           Gadeir I. Abbas (VA Bar No. 81161)*
                                             (*pro hac vice* admission pending)
                                           453 New Jersey Ave., SE
                                           Washington, DC 20003
                                           Phone: (202) 742-6420
                                           Fax:    (202) 379-3317

                                               *Licensed in VA, not in D.C.*
                                               *Practice limited to federal matters*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... **Error! Bookmark not defined.**

INTRODUCTION ........................................................................................................................ 4

FACTUAL BACKGROUND ....................................................................................................... 4

ARGUMENT ................................................................................................................................ 6

I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS THAT ALASKA'S NUTRITION POLICY FOR MUSLIM INMATES FASTING DURING RAMADAN VIOLATES RLUIPA. ................................................................................................................. 7

    A.   Plaintiffs Have Satisfied The Prison Litigation Reform Act's Exhaustion Requirement. .......... 7

    C.   Alaska's Application Of Its Religious Dietary Policy To Plaintiffs And All Muslims Fasting During Ramadan Imposes A Substantial Burden Under RLUIPA. ........................................ 9

    D.   Alaska's Application Of Its Religious Dietary Policy To Plaintiffs And All Muslims Fasting During Ramadan Imposes A Substantial Burden Under RLUIPA. ...................................... 10

II. THE REMAINING PRELIMINARY INJUNCTION FACTORS WEIGH IN FAVOR OF ORDERING THE IMMEDIATE AND NUTRITIONALLY ADEQUATE ACCOMODATION OF RAMADAN FASTING. .................................................................................................... 12

CONCLUSION .......................................................................................................................... 14

## INTRODUCTION

Plaintiffs Anas Dowl and Ernest Jacobsson are practicing Muslims confined to the Anchorage Correctional Complex. Verified Complaint ¶¶ 9-10. Defendants are Alaska prison officials who have refused to provide Plaintiffs, and other Muslim inmates, with adequate nutrition and pork-free meals during the holy month of Ramadan. *Id.* ¶¶ 11-20. Plaintiffs hereby respectfully move pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*, for a temporary restraining order and/or preliminary injunction compelling Defendants to supply adequate nutrition to Plaintiffs and Muslim prisoners who are fasting during Ramadan until June 15, 2018.

## FACTUAL BACKGROUND

Fasting from sunrise to sunset during the holy month of Ramadan is one of the five pillars of Islam. Verified Complaint ¶¶ 42-44. Ramadan is based off a lunar calendar. This year Ramadan started on May 16, 2018, and will end on approximately June 15, 2018. *See id.* ¶ 77. Plaintiffs are cellmates who observe the practice of fasting during Ramadan due to their sincerely-held religious (Islam) beliefs. *Id.* ¶¶ 42, 64.

Defendants recognize that Plaintiffs are practicing Muslims who are fasting during Ramadan, but refuse to adequately accommodate the practice. *See id.* ¶¶ 45-47, 53-80. During this holy month, Defendants provide Plaintiffs and all Muslim inmates with small, cold, bagged meals to eat in their cells between sunset and sunrise. *See id.* ¶¶ 35-37, 53-55. Plaintiffs are not permitted access to hot meals, nor are they permitted to store any food other than the bagged meals in their cells. *See id.* ¶¶ 38-40, 74. On multiple occasions, the cold sandwiches Defendants provide have contained pork products. *Id.* ¶ 37, 56-57. Plaintiffs have a sincere religious belief that pork is *haram*, or forbidden under Muslim dietary codes; they will not eat sandwiches with pork. *Id.* ¶¶ 56-57.

4

Defendants have also confiscated Plaintiffs' food that they save to eat after sunset. On May 19, 2018, minutes after Plaintiff Dowl's prescheduled call with undersigned counsel regarding Ramadan accommodations, Defendants conducted a "shake down" of Plaintiffs' shared cell, confiscating their bagged meals and four hamburgers Plaintiffs had received from other inmates in exchange for the bagged bologna (i.e. pork) sandwiches. *See id.* ¶¶ 62-70.

During Ramadan in both 2017 and 2018, Plaintiff Dowl filed informal grievance requests regarding Defendants' Ramadan Policy. *Id.* ¶¶ 58, 61. The informal grievances related to inadequate nutrition, the lack of hot meals, and the supply of pork products. *Id.* Plaintiff Jacobsson submitted a comparable informal grievance for Ramadan 2018. *See id.* ¶ 59. These informal grievances have been ignored or denied. *Id.* ¶ 60. On May 19, 2018, Plaintiffs took the next step of filing formal grievances, adding the charge that Defendant Luper had confiscated the only food they had to eat that day. *Id.* ¶¶ 71-72. These grievances have thus far been ignored. *Id.* ¶¶ 73. On May 21, 2018, Plaintiffs filed "emergency" grievances regarding the Defendants' failure to provide adequate Ramadan meals, including that the provided meals contain pork. *Id.* ¶¶ 75. On May 22, 2018, Defendants informed Plaintiffs their grievances did not qualify as "emergencies" and unilaterally converted them over to the "standard" grievance procedure, which can take two to four months to resolve. *Id.* ¶ 76. Ramadan lasts for the next three weeks, during which time Plaintiffs are experiencing or at risk of experiencing malnutrition, starvation, weight loss, headaches, dizziness, and other harms caused by Defendants refusal to provide religiously adequate food. *Id.* ¶¶ 77-79.

Plaintiffs have exhausted their administrative ability to obtain emergency relief as to Defendants' refusal to accommodate Plaintiffs' Ramadan fasting by providing adequate nutrition. *Id.* ¶ 80.

# ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Arc of California v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (citation omitted). The Ninth Circuit uses a "sliding scale approach to preliminary injunctions," under which a preliminary injunction should issue "where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (cleaned up); *accord M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012). Supreme Court and Ninth Circuit precedent clearly favor enjoining state violations of federal law. *E.g. American Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1059-60 (9th Cir. 2009).

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The underlying purpose of a TRO is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing is held. *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974); *accord Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006).

The holy month of Ramadan started with the new moon on May 16, 2018 and ends on approximately June 15, 2018. *See* Verified Complaint ¶ 77. Plaintiffs are experiencing a deprivation of adequate nutrition *right now* due to Defendants' refusal to accommodate their religious practice. *See id.* ¶ 79. A temporary restraining order is necessary here to make sure they are adequately fed, with non-pork products, starting immediately. The temporary restraining order should then be converted into a preliminary injunction as soon as a hearing may be held.

6

**I.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS THAT ALASKA'S NUTRITION POLICY FOR MUSLIM INMATES FASTING DURING RAMADAN VIOLATES RLUIPA.[1]**

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") prohibits state prisons from imposing substantial burdens on the religious exercise of inmates. 42 U.S.C. § 2000cc-1. "Congress enacted RLUIPA … in order to provide very broad protection for religious liberty" to prisoners. *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015). Alaska may only justify its failure to provide adequate nutrition during Ramadan to its Muslim inmates if it overcomes statutorily-mandated strict scrutiny: Alaska must demonstrate that not providing food furthers a compelling governmental interest by the least restrictive means. 42 U.S.C. § 2000cc-1(a). Alaska cannot satisfy its burden.

**A.  Plaintiffs Have Satisfied The Prison Litigation Reform Act's Exhaustion Requirement.**

Pursuant to the Prison Litigation Reform Act ("PLRA"), "No action shall be brought with respect to prison conditions … until such administrative remedies as are available are exhausted." 42 USCS § 1997e. Plaintiffs seek court intervention because the Alaska Department of Correction has refused to consider their Ramadan-nutrition grievance as an emergency, the final administrative step for emergency requests.

Alaska Department of Corrections Policy # 808.03[2] sets forth the administrative procedures for prisoner grievances. It provides that "A prisoner may grieve any alleged action violating the

---

[1] Plaintiffs provide additional facts, legal claims, and requested relief in their Verified Complaint. Due to the extraordinary and expedited nature of a temporary restraining order, Plaintiffs seek in this motion to remedy the most immediate of their harms, primarily on the narrowest statutory grounds. As detailed in the Complaint, the First Amendment and Eighth Amendment to the United States Constitution also support the requested relief. If necessary, Plaintiffs will update this memorandum to provide the full legal basis for a preliminary injunction on constitutional grounds.

[2] *Prisoner Grievances*, Policy # 808.03, STATE OF ALASKA DEPARTMENT OF CORRECTIONS POLICIES AND PROCEDURES (effective date October 13, 2006), available at http://www.correct.state.ak.us/pnp/pdf/808.03.pdf.

Department's regulations, statutes policies, or procedures stated in the prisoner handbook." Policy # 808.03 § VI(E)(1)(a). The Grievance Policy is silent on grievances related to the prison's compliance with Department policy, where the prisoner alleges that those polices violate federal law. *See id.*

Alaska's Standard Grievance Procedure follows four steps. *Id.* § VII(A). A prisoner must first try to resolve issues informally. *Id.* § VII(A)(1)(b). If unsuccessful, the prisoner must file a formal grievance within 30 days of an incident. *Id.* § VII(A)(1)(a), (c). Within two working days of receiving an adverse decision, the prisoner may appeal. *Id.* § VII(A)(1)(f). If the first appeal does not resolve the concern, the prisoner may appeal again, within twenty working days, to the Standards Administrator. *Id.* § VII(A)(1)(g). "The review by the Standards Administrator serves as the final administrative action of the Department on the grievance." *Id.* § VII(A)(1)(g)(2). Based on the Grievance Policy timelines, the complete administrative resolution process may last between two and four months. *Id.* § VII(A).

Alaska provides a separate Emergency Grievance Procedure for issues that "may cause harm to any individual." *Id.* § V(A). Emergency Grievances do not require prisoners to attempt informal resolution first. *Id.* § VII(D). Upon submitting an Emergency Grievance, the Facility Manager must "determine whether the issue grieved is an emergency." *Id.* § VII(D)(2)(c). If the issue grieved is determined to be an emergency, it must be investigated and resolved within one day. *Id.* § VII(D)(2)(d). If the Facility Manager does not consider the issue to be an emergency, the emergency grievance will be converted into a standard grievance. *Id.* § VII(D)(2)(f). The Facility Manager's decision as to whether or not an issue constitutes an emergency is not administratively reviewable or appealable. *Id.* § VI(E)(2)(i); § VII(D)(1)(c).

Plaintiffs each filed an Emergency Grievance concerning Defendants' refusal to provide adequate nutrition during Ramadan, including Defendants' inappropriate inclusion of pork products

8

Case 3:18-cv-00119-HRH   Document 2   Filed 05/22/18   Page 8 of 14

in the supplied meals, on May 21, 2018. Verified Complaint ¶ 75. Today, on May 22, 2018, Defendants responded that Plaintiffs' concern did not constitute an emergency. *Id.* ¶ 76. Plaintiffs have therefore exhausted the Emergency Grievance procedure, necessitating this application for a temporary restraining order. *See id.* ¶¶ 77-80.

In any event, Plaintiffs grievances fall outside the scope of what can be administratively grieved. Plaintiffs concerns with Defendants' Ramadan Policy are not solely based on Alaska's violation of its policies, but rather Alaska's *adherence* to its own Ramadan Policy in a manner that violates RLUIPA and the U.S. Constitution. Alaska's grievance procedure is silent regarding the administrative resolution of prisoner claims that correctional policies violate federal law or the U.S. Constitution. Because no administrative remedies are "available" under the PLRA for federal statutory or constitutional challenges to Alaska policies themselves, "exhaustion" is impossible and review is proper in the first instance by this Court. *See Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016).

### B. Alaska's Application Of Its Religious Dietary Policy To Plaintiffs And All Muslims Fasting During Ramadan Imposes A Substantial Burden Under RLUIPA.

Courts have "repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden," particularly during Ramadan. *See, e.g., Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016) (collecting cases and finding a substantial burden where prison denied inmate Ramadan meals for two days).

The Anchorage Correctional Complex has agreed to provide Plaintiffs and other Muslim prisoners with food throughout Ramadan. *See* Verified Complaint ¶¶ 43-46. However, the food provided is insufficient. *Id.* ¶¶ 49-79. The Alaska Department of Corrections Food Service Standards provide that all meals must be "nutritious, well-balanced and heart-healthy" in accordance

9

with "recommended daily dietary allowances."[3] Policy # 805.01 §§ VI(A); VII(B)(1). Federal guidelines estimate that Plaintiffs should eat 2,600 to 2,800 calories per day.[4] Verified Complaint ¶. 34. But during Ramadan, Defendants have only provided Plaintiffs and other Muslim inmates with cold bagged meals containing 500 to 1,100 calories per day. *Id.* ¶¶ 35, 85. Defendants have also included pork products such as bologna in these meals (which Muslims, including Plaintiffs, cannot eat), and have forbidden Plaintiffs from storing any other food in their cell other than the bagged meals provided. *Id.* ¶¶ 36-40, 64-67, 74. These small, cold, pork-filled bagged meals fail to "approximate the cost, quantity, quality, and nutritional adequacy" of hot meals provided to the general prison population. *See* Policy # 805.03, Policy § VI. Defendants failure to supply Plaintiffs with adequate, religiously edible nutrition has imposed a substantial burden on their religious practice of Ramadan.

      **C.    Alaska's Application Of Its Religious Dietary Policy To Plaintiffs And All Muslims Fasting During Ramadan Imposes A Substantial Burden Under RLUIPA.**

Defendants have not yet supplied a compelling governmental interest for their Ramadan Policy. Nor can they; Defendants have no compelling interest in Muslim prisoner malnutrition.

The Alaska Department of Corrections promulgates an official policy on Special And / Or Religious Diets And Meals.[5] This policy provides for religious diets and special religious meals to

---

[3] *Food Service Standards*, Policy # 805.01, STATE OF ALASKA DEPARTMENT OF CORRECTIONS POLICIES AND PROCEDURES (effective date May 15, 2016), available at http://www.correct.state.ak.us/pnp/pdf/805.01.pdf?051716.

[4] *Dietary Guidelines for Americans 2015-2020*, U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES and U.S. DEPARTMENT OF AGRICULTURE (2015), available at https://health.gov/dietaryguidelines/2015/resources/2015-2020_Dietary_Guidelines.pdf.

[5] *Special And/Or Religious Diets And Meals*, Policy # 805.03, STATE OF ALASKA DEPARTMENT OF CORRECTIONS POLICIES AND PROCEDURES (effective date March 6, 2018), available at http://www.correct.state.ak.us/pnp/pdf/805.03.pdf.

prisons, subject to approval by the prison's Religious Coordinator and Superintendent. *See* Policy # 805.03 Policy §§ III, V. These accommodations only exist "to the extent that is reasonably possible" consistent with Department "resources" and "must approximate the cost, quantity, quality, and nutritional adequacy" of meals provided to the general population. *Id.* Policy § I, VI. With respecting to "Fasting for Ramadan," the official Department of Corrections policy is to only accommodate the practice "in so far as Department resources permit," with the additional caveat that "temporary multi-day religious fasting … may not exceed four (4) days per year." Policy # 805.03 Procedures § II(E). Special meals, such as for religious events, may only be served "at the discretion of the Superintendent." *Id.* § III(A).

The Department's qualifications regarding "reasonable" and "resource" constraints for its religious accommodations establishes a far lower bar than the compelling interest RLUIPA demands. Congress has stated that RLUIPA "'may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise.'" *Holt*, 135 S. Ct. at 860, (quoting 42 U.S.C. § 2000cc-3(c)). Nor do Defendants have a compelling interest in the exercise of unfettered superintendent discretion regarding the provision of religious diets and meal permissible. *See, e.g., Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 193 (2d Cir. 2014) ("RLUIPA's substantial burden provision combats 'subtle forms of discrimination' … that may occur when 'a state delegates essentially standardless discretion to nonprofessionals operating without procedural safeguards.'") (quoting *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 900 (7th Cir. 2005)).

Defendants provide full nutritionally-compliant meals to all other inmates during Ramadan except its Muslim ones. Verified Complaint ¶ 34. Plaintiffs have further proposed several alternatives to the Department's current deficient practices. These options include not providing pork products in the bagged meals; providing additional Muslim-diet-compliant foods within the

11

bagged meals; permitting Plaintiffs to obtain hot food from the general inmate line and store it in their cell until after sundown; permitting Plaintiffs to store *any* food other than the bagged lunches in their cells; and/or providing a separate "hot food" meal after sundown for Muslim inmates. All of these options are commonly offered to Muslims in institutions across the country; Defendants offer no reasons why they cannot supply them in Alaska. *Accord Holt v. Hobbs*, 135 S. Ct. 853, 866 (2015) ("When so many prisons offer an accommodation, a prison must, at a minimum, offer persuasive reasons why it believes that it must take a different course.").

## II. THE REMAINING PRELIMINARY INJUNCTION FACTORS WEIGH IN FAVOR OF ORDERING THE IMMEDIATE AND NUTRITIONALLY ADEQUATE ACCOMODATION OF RAMADAN FASTING.

After demonstrating either a likelihood of success on the merits or a serious question going to the merits, the party seeking a temporary restraining order or preliminary injunction must show that (a) it is likely to suffer irreparable harm in the absence of preliminary relief, (b) the balance of equities tips in his favor, and (c) a preliminary injunction is in the public interest. *E.g., Arc of California*, 757 F.3d at 983. Because each factor clearly favors Plaintiffs, a temporary and preliminary injunction against the current prison practices surrounding food during Ramadan, and requiring the provision of adequate nutrition without pork products, is necessary to alleviate the substantial burden on their religious observance.

**Irreparable Harm.** The "loss of First Amendment freedoms, for even minimal amounts of time, unquestionably constitutes irreparable injury." *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). This principle applies equally to RLUIPA violations. *See, e.g., Staples v. Gerry*, No. 14-cv-473, 2015 U.S. Dist. LEXIS 86629, at *44 (D.N.H. May 11, 2015) ("The loss of religious freedom caused by a RLUIPA violation is sufficient to show irreparable harm.").

Malnutrition, particularly over a month-long period, also constitutes irreparable harm. The Eighth Amendment, as incorporated to states through the Fourteenth Amendment, requires prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Defendants' refusal to provide Plaintiffs and other Muslim inmates during Ramadan with sufficient calories, nutrition, and non-pork products constitutes a cruel condition of confinement. Even more egregiously, Defendants' seizure of Plaintiffs' stored food meant that Plaintiffs went without any nutrition at all from May 19, 2018 to May 20, 2018. Verified Complaint ¶¶ 62-71. This is a manifest failure by Defendants to abide by Eighth Amendment constraints.

Absent relief from this Court, Plaintiffs will face the choice of adhering to their sincerely-held religious beliefs of daytime fasting during Ramadan, or abandoning the practice and violating their sincerely-held religious beliefs in order to survive and eat adequate meals. This constitutes irreparable harm, and warrants a temporary restraining order and preliminary injunction requiring Defendants' to appropriately accommodated of Plaintiffs' religious practice.

**Balance of the Equities**. The scales of equity sharply tip in favor of upholding fundamental First Amendment values. *See Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2008). The scales further favor enjoining violations of federal law. *See, e.g., Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). An injunction here would impose no burden on Defendants insofar as it simply requires the provision of nutritionally sufficient food to its fasting Muslim inmates, comparable to what is provided to the general population. An injunction would also impose at most a minimal burden on Defendants insofar as it requires them to avoid pork products or provide hot post-sunset dinners until June 14, 2018. *See, e.g., Ebel v. City of Corona*, 698 F.2d 390, 393 (9th Cir. 1983) (holding that balance of hardships tips decisively against the state where it cannot substantiate its harms). Meanwhile, the burden on Plaintiffs and other fasting

13

Muslim inmates is substantial. Each and every day during Ramadan they are unable to gain adequate nutrition, and severely hampered from practicing their Muslim faith. When the balance of equities "tips sharply" in the plaintiff's favor—as it does here—an injunction is proper. *Planned Parenthood Arizona, Inc. v. Humble*, 753 F.3d 905, 911 (9th Cir. 2014); *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012); *Alliance for the Wild Rockies*, 632 F.3d at 1135.

**Public Interest**. There is a "significant public interest in upholding First Amendment principles." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1129 (9th Cir. 2011). It similarly "is clear that it would not be equitable or in the public's interest to allow the state … to violate the requirements of federal law." *Arizona Dream Act Coalition*, 757 F.3d at 1069 (citation omitted). And "Congress's enactment of RLUIPA manifests that the public has an interest in ensuring that inmates' individual religious practices are not substantially burdened by government policies." *Staples v. Gerry*, No. 14-cv-473-JL, 2015 U.S. Dist. LEXIS 86629, at *47 (D.N.H. May 11, 2015).

## CONCLUSION

The Court should impose a temporary restraining order and preliminary injunction requiring Defendants to supply Plaintiffs and all fasting Muslim inmates with nutritionally adequate, and pork-free, meals during Ramadan.

Dated: May 22, 2018                                CAIR LEGAL DEFENSE FUND

By /s/ Lena F. Masri
Lena F. Masri (D.C. Bar No. 100019)
(*pro hac vice* admission pending)
Gadeir I. Abbas (VA Bar No. 81161)*
(*pro hac vice* admission pending)
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax:    (202) 379-3317

*Licensed in VA, not in D.C.*
*Practice limited to federal matters*