WO	IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

\
ANAS A. DOWL, inmate #345639, and )
ERNEST A. JACOBBSON, inmate # 403566, )
)
                             Plaintiffs, )
)
  vs. )
)
DEAN WILLIAMS, Commissioner, )
Alaska Department of Corrections, et al., )
                                   ) No. 3:18-cv-0119-HRH
                         Defendants. )
_____)

<u>O R D E R</u>

Motion for Temporary Restraining Order

Plaintiffs Anas A. Dowl and Ernest A. Jacobbson are inmates at the Anchorage Correctional Complex, and they are practicing Muslims.[1] In their verified complaint, plaintiffs state that during Ramadan, which this year started on May 16, 2018 and ends on June 15, 2018,[2] they are being provided two cold, bagged meals to eat in their cells after sunset but that these meals do not contain sufficient nutrition and at times have contained pork products.[3] More specifically, plaintiffs state that the bagged meals contain only

---

[1] Verified Complaint [etc.] at 4, ¶¶ 9-10, Docket No. 1.

[2] Id. at 7, n.1.

[3] Id. at 9, ¶¶ 35-37.

-1-

approximately 500 to 1100 calories per day, "which is substantially lower than what is required under [the Department of Corrections'] Policy and Procedure Directive 805.01 'Food Service Standards,' and the [federal] 'Dietary Guidelines for Americans 2015-2020.'"[4] Plaintiffs contend that per the federal guidelines, they should be receiving between 2600 and 2800 calories per day.[5] Plaintiffs further contend that on the days that their bagged meals contain bologna sandwiches, which they believe contain pork product and which they cannot eat, they are receiving even fewer calories.[6]

Plaintiffs now move for a temporary restraining order[7] compelling defendants to provide plaintiffs and all other fasting Muslim inmates with nutritionally adequate, and pork-free, meals during Ramadan. A hearing on the motion was held on May 24, 2018, at which counsel for plaintiffs and counsel for the Alaska Department of Corrections participated.

Discussion

"[T]he legal standards applicable to TROs and preliminary injunctions are 'substantially identical.'" Wash. v. Trump, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (quoting Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir.

---

[4]Id. at 8, ¶ 29.

[5]Id. at ¶ 34.

[6]Id. at ¶¶ 36-37.

[7]Docket No. 2. Although the motion for a temporary restraining order was filed ex parte, the court declined to consider the motion on an ex parte basis. See Order re Motion for Ex Parte Temporary Restraining Order at 1, Docket No. 7.

2001)). "A party seeking a preliminary injunction must meet one of two variants of the same standard." Alliance for the Wild Rockies v. Pena, 865 F.3d 1211, 1217 (9th Cir. 2017). "Under the original Winter standard, a party must show 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Id. (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). "Under the 'sliding scale' variant of the Winter standard, 'if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor,' and the other two Winter factors are satisfied.'" Id. (quoting Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1291 (9th Cir. 2013)). A plaintiff need not establish that he is likely to succeed on the merits of all his claims. A TRO or preliminary injunction may issue if a plaintiff can show he is likely to succeed on one claim and that he meets the other three requirements for injunctive relief. League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton, 752 F.3d 755, 766 n.3 (9th Cir. 2014).

The Prison Litigation Reform Act of 1995 "'requires that a prisoner challenging prison conditions exhaust available administrative remedies before filing suit.'" Jackson v. Fong, 870 F.3d 928, 933 (9th Cir. 2017) (quoting Albino v. Baca, 747 F.3d 1162, 1165 (9th Cir. 2014)). Plaintiffs state that they each filed an emergency grievance on May 21, 2018,

and that on May 22, 2018, defendants determined that these grievances were not emergencies.[8] Because the Emergency Grievance procedure provides that the decision as to whether an issue constitutes an emergency is not administratively appealable,[9] plaintiffs have exhausted the Emergency Grievance procedure. The court concludes that, for purposes of the instant motion, plaintiffs have exhausted their available administrative remedies.

Turning then to the merits of plaintiffs' motion for a TRO, plaintiffs only argue that they are likely to succeed on their claim in Count II that defendants have violated The Religious Land Use and Institutionalized Persons Act (RLUIPA).

> Section 3 of RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling governmental interest," and does so by "the least restrictive means."

Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005) (quoting 42 U.S.C. § 2000cc–1(a)(1)-(2)).

"[A] burden is substantial under RLUIPA when the state 'denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Shakur v. Schriro, 514 F.3d 878, 888 (9th Cir. 2008) (quoting Warsoldier, 418 F.3d at 995). Courts "have

---

[8]Verified Complaint [etc.] at 15, ¶¶ 75-76, Docket No. 1.

[9]Id. at 15, ¶ 78.

repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden." Thompson v. Holm, 809 F.3d 376, 380 (7th Cir. 2016); see also, McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987) ("[i]nmates . . . have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion"). Plaintiffs contend that they are being provided with Ramadan meals that contain only 500 to 1100 calories per day, rather than the recommended federal guideline caloric intake of 2600 to 2800 calories per day. Even if plaintiffs received sufficient food on some days, there is evidence that they have not received sufficient food every day.[10] At least one court has held that having insufficient food on only two days constituted a substantial burden. Thompson, 809 F.3d at 380. The court cannot perceive of any compelling governmental interest that would be furthered by providing plaintiffs with Ramadan meals that do not contain sufficient nutrition or that contain pork product. That it may cost slightly more to feed Muslim prisoners during Ramadan is not a compelling interest, given that RLUIPA "'may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise.'" Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. 2751, 2781 (2014) (quoting 42 U.S.C. § 2000cc-3). In sum, based on the facts as stated in plaintiffs' verified complaint, plaintiffs have shown that they are likely to succeed on their RLUIPA claim in Count II.

---

[10]Declaration of Lena F. Masri [etc.] at 2, ¶¶ 2-5, Docket No. 9.

Because plaintiffs have shown that they are likely to succeed on one of their RLUIPA claims, they have met the other requirements for a TRO. "[T]he loss of religious freedom caused by a RLUIPA violation–standing alone–is sufficient to show irreparable harm. . . ." Harris v. Wall, 217 F. Supp. 3d 541, 560 (D.R.I. 2016). Plaintiffs are also being irreparably harmed because they may not be receiving adequate nutrition on a daily basis. As for the balance of equities and public interest, "[i]t is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law[.]'" Ariz. Dream Act Coalition v. Brewer, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013)).

"Although Federal Rule of Civil Procedure 65(c) generally provides that a" temporary restraining order "will not issue except upon the giving of security, it is not required where plaintiffs are indigent or where considerations of public policy make waiver of a bond appropriate." Miller v. Carlson, 768 F. Supp. 1331, 1340 (N.D. Cal. 1991). Because plaintiffs are currently incarcerated, the court will waive the bond requirement.

Based on the foregoing, plaintiffs' motion for a temporary restraining order is granted. Effectively immediately, defendants are enjoined from

1) providing plaintiffs, and other fasting Muslim inmates, Ramadan meals that contain less than 2600 calories per day; defendants shall provide plaintiffs, and other fasting Muslim inmates, with daily Ramadan meals that contain at least 2600 calories;

2) providing plaintiffs, and other fasting Muslim inmates, Ramadan meals that contain pork products; and

3) removing either or both of plaintiffs from the Ramadan Meal List for any reason. If either or both of plaintiffs are not currently on the Ramadan Meal List, defendants shall put them back on the list immediately.

This temporary restraining order shall remain in effect until the court rules on plaintiffs' motion for a preliminary injunction.

Defendants' response to plaintiffs' motion for a preliminary injunction shall be filed by 4 p.m. Alaska Daylight Time, on May 31, 2018. Plaintiffs' reply shall be filed no later than June 4, 2018. In further briefing plaintiffs' motion for a preliminary injunction, counsel are again directed to consider D. Ak. Local Rule 7.2(b) as regarding hearings and evidentiary hearings.

DATED at Anchorage, Alaska, this 25th day of May, 2018 at 9:12 a.m.

/s/ H. Russel Holland
United States District Judge