IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

```
ANAS A. DOWL, Inmate #345639,          )
        and                             )
ERNEST A. JACOBSSON, Inmate #403566,   )
                                        )
                        Plaintiffs,     )
        v.                              )
                                        )
JEN WINKELMAN, Commissioner,            )
Alaska Department of Corrections        )    No. 3:18-cv-0119-HRH
                                        )
                        Defendant.      )
_____)
```

O R D E R

Motion to Enforce Settlement Agreement[1]

William Gary, Tristan Grant, and Clarence Taylor ("Movants"), inmates at the Anchorage Correctional Complex ("ACC"), move as third-party beneficiaries for enforcement of a Settlement Agreement[2] and judgment[3] which were entered in this civil rights case on September 6, 2019. The motion is opposed by defendant Jen Winkelman, who is now Commissioner of the Alaska Department of Corrections ("DOC").[4] The Movants have replied.[5]

---

[1]Docket No. 64 and 65, 66.

[2]Docket No. 62-1.

[3]Docket No. 63.

[4]Docket No. 73.

[5]Docket No. 78.

ORDER – Motion to Enforce Settlement Agreement  - 1 -

The Settlement Agreement that was reached in this case resolved a civil rights dispute between inmates at the ACC and the defendant commissioner concerning the availability of religious services and religious diets and meal policies. By its judgment, the court approved the parties' Settlement Agreement, dismissed plaintiffs' amended complaint with prejudice, and retained jurisdiction of the case "for purposes of enforcing the terms of the Settlement Agreement."[6]

Movants, as third-party beneficiaries, bring before the court complaints concerning a DOC guideline that inmates participating in the Muslim holy month of Ramadan be gathered in one module.[7] Some inmates complied with this policy change and have been afforded Ramadan compliant meals ("Ramadan meals") daily between sunset and sunrise. However, the moving third-party beneficiaries have encountered specific problems with the foregoing guideline and move to enforce the Settlement Agreement.

The Movants' complaints are summarized below, followed by the court's decision.

<u>Tristan Grant.</u> Mr. Grant signed up for Ramadan meals, was moved to the Ramadan module in the ACC, and packed up his personal belongings which, as of March 3, 2025, had not been moved to the Ramadan module. Mr. Grant complains that some meals were small and some were cold or room temperature. Mr. Grant states that: "he's not sure he will be able to feed himself adequately."[8]

The failure to deliver Mr. Grant's personal belongings was an inconvenience, not a violation of any term of the Settlement Agreement or the guidelines applicable to the 2025

---

[6] Docket No. 63.

[7] See Memorandum in Support of Motion to Enforce Settlement Agreement at 8, Docket No. 65. The DOC's guideline form provided that participating inmates would be housed in the same module.

[8] Docket No. 65 at 11.

ORDER – Motion to Enforce Settlement Agreement - 2 -

Ramadan meal program. Neither the terms of the Settlement Agreement nor the guidelines for Ramadan meals address the subject of a prisoner's personal property. The failure to promptly deliver Mr. Grant's personal property from one general population mod to another where Ramadan meals were available does not in any material way adversely impact the Ramadan meal program. The resolution of personal property problems can and should be addressed and resolved through the administrative claims process which is available.[9] Assuming that Mr. Grant will remain in the Ramadan module, the DOC shall verify forthwith that his personal belongings have been delivered to the Ramadan module.

If he chooses, Mr. Grant can elect to be relocated within ACC; but, if he does so, he will not receive Ramadan meals. In this regard, the court notes that the 2025 guidelines, paragraph 5, wrongly states that "if you elect to no longer observe Ramadan, you will not be permitted to reinstate."[10] That provision of the guidelines is inconsistent with the Settlement Agreement terms which provide that inmates not participating in the Ramadan meal program "may request to be included on the Ramadan List at any time prior to and during Ramadan. DOC will fulfill said requests within one business day."[11]

As regards the size and quality of meals, the DOC has submitted declarations[12] which extensively address the efforts made to provide Ramadan meal program participants with meals of the size and quality that the Settlement Agreement expected. The court is unpersuaded that any violation of the Settlement Agreement has occurred with respect to Mr. Grant's meals. Hopefully the declarations will satisfy Mr. Grant. However,

---

[9] See Affidavit of Chris Lyou at 5, ¶ 14, Docket No. 75.

[10] Docket No. 65 at 8, ¶ 5.

[11] Docket No. 62-1 at 3, Term 1.

[12] Docket Nos. 74 and 75.

the court deems the Movants' request for some meal logs to be appropriate. The subject of these proceedings is the 2025 Ramadan meal program, and the ACC shall provide Movants with copies of meal logs generated between the commencement of Ramadan and today's date.

The court understands that Mr. Grant and probably others find moving from one module to another to be stressful. Compliance with the Ramadan meal program requires an extra effort for everyone: the DOC must deal with special staffing and logistics problems upon which success of the Ramadan meal program depends.

William Gary. Mr. Gary signed up for Ramadan meals for 2025. Mr. Gary is recovering from hemorrhoid surgery and was required to follow certain protocols regarding his use of a toilet and shower. He appears to have been housed in an ADA compliant cell. When he was moved to the Ramadan module, he was not provided with an ADA compliant cell.

Mr. Gary's medical situation has been updated by the declaration of the DOC's chief medical officer, Dr. Timothy Ballard[13] and the second affidavit of Mr. Gary.[14] The doctor opines that "Mr. Gary does not meet the requirements for an American with Disabilities Act compliant cell[.]"[15] Dr. Ballard's declaration verifies that Mr. Gary has received timely medical attention.

Mr. Gary is no doubt experiencing an unpleasant 2025 Ramadan due to his medical condition, but that is not a violation of the Settlement Agreement. Like Mr. Grant,

---

[13] Docket No. 76.

[14] Docket No. 78-1.

[15] Docket No. 76, ¶ 10.

ORDER – Motion to Enforce Settlement Agreement - 4 -

Mr. Gary may opt out of the Ramadan meal program if he so chooses; but, if he does so, he will not receive Ramadan meals.

Clarence Taylor. Mr. Taylor signed up for Ramadan meals but refused to move to the Ramadan module. Mr. Taylor was then removed from the Ramadan meal program because he refused to move. He was told that Ramadan meals were contingent on his moving to the Ramadan module. Mr. Taylor is attempting to feed himself by saving standard ACC meals for use after sunset and before sunrise. Mr. Taylor has not been told that he can sign up for Ramadan meals at any point during Ramadan.[16]

The Settlement Agreement and judgment do not preclude the DOC from implementing the guideline[17] upon which the DOC relies for insisting that Ramadan meal program participants be housed in the same module.

By refusing to relocate, Mr. Taylor opted out of the Ramadan meal program and will not receive Ramadan meals at his present location. However, pursuant to Term 1 of the Settlement Agreement, "inmates may request to be included on the Ramadan List at any time prior to and during Ramadan. DOC will fulfill said requests within one business day."[18] Therefore, and even though Mr. Taylor has declined to relocate to the Ramadan module, he may at any time during Ramadan elect to relocate to the Ramadan module and begin receiving Ramadan meals.

The court concludes that the DOC has not violated the Settlement Agreement or the court's judgment by refusing Mr. Taylor Ramadan meals. The Settlement Agreement does

---

[16]Affidavit of Clarence Taylor, Docket No. 66-3, and Second Affidavit of Clarence Taylor, Docket No. 78-2.

[17]See Memorandum in Support of Motion to Enforce Settlement Agreement at 8, ¶ 1, Docket No. 65.

[18]Docket No. 62-1 at 3, Term 1.

not prohibit the DOC officials from taking appropriate administrative steps, such as gathering Ramadan meal participants in one module, to carry out its obligations under the Settlement Agreement. Mr. Taylor chose not to participate in the program when he refused to relocate. As set out above, he may even now change his mind, relocate, and participate in the 2025 Ramadan meal program.

In responding to the motion to enforce the Settlement Agreement, the DOC discusses the role in this case, if any, of the Religious Land Use and Incarcerated Persons Act ("RLUIPA"), 18 U.S.C. § 3626. By 18 U.S.C. § 3626, the court is precluded from granting or approving prospective relief that is not narrowly drawn, extends no further than necessary to correct the violation of federal rights, and is the least intrusive means necessary to correct the violation. The DOC argues that the Settlement Agreement is a consent decree and that it is consistent with Section 3626. Movants do not mention Section 3626 in their motion. They move to enforce the Settlement Agreement and judgment as written.

The original parties to this case requested the court to "enter" (approve) their Settlement Agreement.[19] This was a joint request by the parties that was not supported by any memorandum of law, nor did the request make any reference to Section 3626. The court approved the parties' settlement agreement, making no mention of Section 3626 – which the parties seem to have assumed was not implicated in their Settlement Agreement.

The court concludes that, inasmuch as it has found no violation of the Settlement Agreement or judgment, it is unnecessary to backtrack on the issue of Section 3626 compliance when, as here, the parties' original complaint has been dismissed with prejudice, and the Movants seek relief based solely upon the Settlement Agreement and judgment.

---

[19]Docket No. 62.

Were the court to reach the Section 3626 issue, it would find that the DOC guideline requiring Ramadan meal program participants to reside in a single module does not impose a substantial burden on the Movants' exercise of their religion.  Neither the Settlement Agreement nor the judgment mention or foreclose the gathering of Ramadan meal program participants in a single module.  The Settlement Agreement requires that the participating inmates move twice:  once at the beginning of Ramadan and a second time at the end of Ramadan.  And during the month of Ramadan, the DOC guidelines impose no burdens or restrictions of any kind on inmates taking meals between sunset and sunrise and fasting during daylight hours.  The relocation of inmates for purposes of Ramadan meals to a single module is not in any fashion punitive.  They are housed in general population modules, and the suggestion that there might be security issues regarding the relocation is pure speculation.  The relocation of Ramadan meal program participants serves a compelling government interest (while at the same time serving the inmates' interest) because it is far more efficient for the DOC to provide special meals using a single kitchen and getting meals delivered timely to a single module.

The motion to enforce Settlement Agreement[20] is denied.

DATED at Anchorage, Alaska, this  14th  day of March, 2025.

/s/ H. Russel Holland
United States District Judge

---

[20]Docket No. 64.

ORDER – Motion to Enforce Settlement Agreement                                                                    - 7 -

Case 3:18-cv-00119-HRH    Document 79    Filed 03/14/25    Page 7 of 7